IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| JEFFREY L. SANDERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 2:08-0060 |
| ) | Judge Trauger |
| BFS RETAIL AND COMMERCIAL ) | |
| OPERATIONS, LLC, d/b/a FIRESTONE ) | |
| COMPLETE AUTO CARE, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM and ORDER**

The defendant has filed a Motion to Dismiss Or, in the Alternative, to Compel Arbitration (Docket No. 6), to which the plaintiff has responded in opposition (Docket No. 9), and the defendant has filed a Reply (Docket No. 11).

The plaintiff's Complaint alleges that the defendant retaliated against him for filing a workers' compensation claim. The defendant claims that the plaintiff has waived his right to file this claim in court and must, instead, pursue mediation and arbitration under the Morgan Tire & Auto, Inc. Employee Dispute Resolution Plan ("EDR Plan"). The plaintiff maintains that he agreed to arbitrate employment claims such as the one lodged in this case against Morgan Tire & Auto, Inc. but did not agree to arbitrate such claims against his present employer, BFS Retail and Commercial Operations, LLC ("BFRC").

Factual Background

The facts appear to be undisputed. On October 25, 2004, when the plaintiff was working for Morgan Tire & Auto, Inc. ("MTA"), he executed the New Employee Acknowledgment and Agreement Form, whereby he agreed to resolve all employment disputes he might have with

1

MTA through the Employee Dispute Resolution Plan. At the time the plaintiff executed this form, BFRC was the parent corporation of its subsidiary, MTA. In April 2006, "BFRC transferred the operations of the Nashville area MTA stores and BFRC became plaintiff's employer." (Docket No. 7 at 4) BRFC, the parent, became the successor to its subsidiary, MTA. Employees working for MTA at this time became employees of BFRC, and employees "were informed the terms and conditions of their employment would not change." (Decl. of Sharon A. Smith, Docket No. 8, ¶6)

The plaintiff maintains that, because BFRC is not a party to the EDR Plan, and because the definition of "Company" in the form that the plaintiff signed and in the Plan are in conflict, he is not bound to arbitrate this dispute with BFRC.

Analysis

Under the Federal Arbitration Act, 9 U.S.C. §§ 1-16, there is a strong presumption in favor of arbitration. *O. J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 355 (6th Cir. 2003). "[A]ny doubts regarding arbitrability must be resolved in favor of arbitration." *Highlands Wellmont Health v. John Deere Health*, 350 F.3d 568, 573 (6th Cir. 2003) (internal citations omitted).

The one-page New Employee Acknowledgment and Agreement signed by the plaintiff references the EDR Plan no less than twelve times and states:

> I acknowledge that I have had an opportunity to review the booklet containing the EDR Plan, a copy of which I received before signing this acknowledgment and agreement. The EDR Plan fully defines the disputes that are covered, describes the procedures for mediation and arbitration, and sets forth the remedies I may obtain.

(Docket No. 8-2) The plaintiff does not dispute that he received the "booklet containing the EDR Plan" and references the Summary Explanation that precedes it. (Docket No. 9 at 2) The

entire EDR Plan is attached as an exhibit to the Declaration of Sharon A. Smith, the Human Resources Manager of MAT. (Docket No. 8)

The EDR Plan was effective September 10, 2003 and, interestingly, the notation "BFRC EDR Plan" appears in the lower left-hand corner throughout. The Table of Contents reflects that the Plan itself is preceded by the Summary Explanation, which consists of nine pages, numbered with lower case Roman numerals; the Plan, with regular Arabic numerals, follows the Summary Explanation. The Summary Explanation repeatedly references, and invites examination of, the Plan itself, such as in this passage:

> Complete details of the EDR Plan are contained in the text of the plan itself, entitled "Morgan Tire & Auto, Inc. Employee Dispute Resolution Plan," which is included in this booklet. If there are any contradictions or discrepancies between the Summary Explanation and the EDR Plan, the provisions of the EDR Plan will govern. . . . For a more detailed description of disputes covered by the EDR Plan, please see Section 2.D. of the EDR Plan itself, which is included in this booklet.

(Docket No. 8-1 at 11) The Summary Explanation also makes clear that the very claim made in this case, retaliation for filing a workers' compensation claim, is covered by the EDR Plan (Docket No. 8-1 at 13) and that "both employees and the Company give up their right to a court case or jury trial as a means of resolving disputes covered by the EDR Plan." (Docket No. 8-1 at 11)

The EDR Plan is called the "Morgan Tire & Auto, Inc." EDR Plan (Docket No. 8-1 at 15), but the "Company" is defined broadly in the EDR Plan:

> "Company" means Morgan Tire & Auto, Inc. ("MTA") including, but not limited to all entities having or having had any ownership interest in MTA, or in which MTA has or has had any ownership interest, and without limitation, all parent, subsidiary, sister, related or affiliate companies, or divisions of MTA, and any and all partners, members, shareholders or owners thereof, together with the officers, managers, supervisors, employees and agents, whether in their official, corporate or individual capacities, of each and all of the foregoing entities, and

3

their respective heirs, executors, personal representatives, administrators, predecessors, successors and assigns. . . .

(Docket No. 8-1 at 16) At the time the plaintiff executed the New Employee Acknowledgment and Agreement, BFRC was the "parent" and a "shareholder" of MTA, and at the time that the plaintiff's alleged cause of action arose, BFRC was the "successor" of MTA. Therefore, clearly "Company," as defined in the EDR Plan, included BFRC, both before and after BFRC became the plaintiff's employer. It does not matter that BFRC did not "sign" the agreement. Non-signatories to an arbitration agreement may be bound by it. *See Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 629 (6th Cir. 2003).

The plaintiff asserts that BFRC is not bound by the Agreement and that, therefore, to hold the plaintiff bound to it makes the Agreement illusory and unenforceable, as it lacks mutuality of obligation. (Docket No. 9 at 5) This assertion is invalid. The EDR Plan provides that it is the "exclusive, final and binding means by which disputes can be resolved. . . . The Parties shall have no right to litigate a dispute in any other forum." (Docket No. 8-1 at 18) "Parties" is defined as "the Company and those Employees and persons defined in Section 4.A. of the EDR Plan." (*Id.*) Therefore, BFRC, which is clearly included within the definition of "Company" under the Plan, is as bound to follow the Plan as the plaintiff is. There is no lack of mutuality in this Agreement and, therefore, it is not illusory and unenforceable.[1]

The plaintiff signed the New Employee Acknowledgment and Agreement Form, wherein he acknowledged that he had received and had an opportunity to review the booklet containing the EDR Plan before signing this form. The plaintiff does not dispute that he received the

---

[1]The plaintiff appears to concede that the company's right to modify the arbitration agreement upon sixty days' written notice does not make it illusory (Docket No. 9 at 5), and he is correct in that assumption. *See Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 379 (6th Cir. 2005).

4

booklet containing the Summary Explanation and the Plan itself.  Both the form he signed and the Summary Explanation consistently referenced the EDR Plan, which clearly defines "Company" in a way to include BFRC as a party to the arbitration agreement, even before it succeeded MTA as the plaintiff's employer.  The Summary Explanation says that, if there are "contradictions or discrepancies" between the Summary Explanation and the EDR Plan, the Plan will govern.  The EDR Plan itself is labeled "BRFC EDR Plan."  When BFRC succeeded MTA as the plaintiff's employer in April 2006, the plaintiff continued to work in the same job, and he was told that the terms and conditions of his employment would not change.  That included the applicability of the EDR Plan to employment disputes, such as a claim of retaliation for filing a workers' compensation claim.  A party is under a duty to learn the contents of the written contracts which one signs.  *See Giles v. Allstate Ins. Co.*, 871 S.W.2d 154, 156-57 (Tenn. Ct. App. 1993).  The plaintiff is bound to the terms of the EDR Plan by his execution of the New Employee Acknowledgment and Agreement.

## Conclusion

For the reasons expressed herein, the court finds the EDR Plan at issue binding upon the plaintiff and BFRC.  The Defendant's Motion to Dismiss (Docket No. 6) is **GRANTED**, and this case is **DISMISSED** so that this dispute may be resolved under the EDR Plan.

It is so **ORDERED.**

Enter this 20th day of August 2008.

_____
ALETA A. TRAUGER
U.S. District Judge